USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: 11/16/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY HERNANDEZ,

Plaintiff,

–against–

MICHAEL CAPRA, *Superintendent of Sing Sing Correctional Facility, sued in his individual capacity*,

Defendant.

7:25-cv-2621 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Anthony Hernandez ("Plaintiff"), proceeding *pro se*, brings this action under 42 U.S.C. § 1983 ("Section 1983") against Defendant Michael Capra ("Defendant" or "Capra"), who was the Superintendent of Sing Sing Correctional Facility ("Sing Sing") at all relevant times, in his individual capacity. (Complaint ("Compl."), ECF No. 1.) Plaintiff alleges that Defendant violated his Eighth Amendment rights by failing to protect him from an assault by another incarcerated individual in the Sing Sing B-Block yard.

Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23.) For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

The following facts are drawn from the Complaint and are accepted as true for purposes of resolving the instant motion.

### I. Factual Background

Plaintiff is currently incarcerated at Wende Correctional Facility. (Compl. ¶ 2.) At the time of the events giving rise to this action, he was incarcerated at Sing Sing. (*Id.*)

On October 17, 2023, at approximately 7:00 p.m., Plaintiff was assaulted by an unknown incarcerated individual in the B-Block yard at Sing Sing. (*Id.* ¶ 6.) The assailant cut the right side of Plaintiff's face with a "razor type weapon," and the resulting laceration required ten stitches at Westchester County Medical Center. (*Id.*) Plaintiff alleges that the assault occurred "in the presence of security staff." (*Id.*) As a result of the assault, Plaintiff was hospitalized and has suffered a permanent laceration to his face, extreme physical pain, depression, mental anguish, and psychological pain. (*Id.* ¶ 11.)

Plaintiff's claim against Defendant rests on the allegation that Defendant "has an unconstitutional practice and custom of inmates being assaulted by unknown inmates in the presence of security staff in the B-Block yard." (*Id.* ¶ 7.) Plaintiff alleges that, during the month he was incarcerated at Sing Sing, "approximately 20 seperate [*sic*] incidents similar or identical" occurred, and that "[w]ithin the last 5 years, so many incidents similar or identical have occurred and have not changed and continue to happen." (*Id.* ¶ 8.) Plaintiff further alleges that Defendant "knows, created and allowed the unconstitutional practice and custom of inmates being assaulted by unknown inmates in the presence of security staff in the B-Block yard." (*Id.* ¶ 9.)

Plaintiff alleges that he exhausted his administrative remedies through the three-step DOCCS grievance process before filing suit. (*Id.* ¶ 12.) He seeks a declaratory judgment that Defendant violated his Eighth Amendment rights, $100,000 in compensatory damages, and $50,000 in punitive damages. (*Id.* ¶¶ 13–15.)

**II. Procedural History**

Plaintiff commenced this action on March 28, 2025. (ECF No. 1.) On June 12, 2025, Plaintiff was granted leave to proceed *in forma pauperis*. (ECF No. 6.) The case was reassigned to the undersigned on July 29, 2025, and the Court issued an Order of Service the following day. (ECF No. 8.)

On December 11, 2025, Defendant requested leave to file a motion to dismiss. (ECF No. 13.) The Court waived the pre-motion conference requirement and set a briefing schedule, which it later extended twice at Plaintiff's request. (ECF Nos. 14, 16, 19.) On April 9, 2026, Defendant filed his motion to dismiss and memorandum of law in support ("Def.'s Mem."). (ECF Nos. 23, 23-1.) Plaintiff opposed the motion through a sworn affidavit ("Pl.'s Aff."), a memorandum of law ("Pl.'s Opp."), and a notice of motion in opposition. (ECF Nos. 20–22.)[1] Defendant filed a reply memorandum of law in further support of his motion ("Def.'s Reply"). (ECF No. 24.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity

[1] Plaintiff's opposition papers also respond to a purported motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (*See* Pl.'s Aff. ¶ 2; Pl.'s Opp. at 2–3; ECF No. 22.) Defendant has not moved under Rule 12(c); his notice of motion seeks dismissal only under Rule 12(b)(6). (ECF No. 23.) Nor could Defendant have moved for judgment on the pleadings, because he has not answered and the pleadings are therefore not closed. *See* Fed. R. Civ. P. 12(c). The Court accordingly construes Plaintiff's submissions, including his notice of motion in opposition, as opposition to Defendant's Rule 12(b)(6) motion. Similarly, although Defendant served Plaintiff with a notice warning that the motion could be treated as one for summary judgment (ECF No. 23-2), Defendant has not submitted any materials outside the pleadings, and the Court decides the motion solely on the pleadings and Plaintiff's submissions.

and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pleaded sufficient facts to take the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**II. *Pro Se* Plaintiffs**

Complaints of *pro se* plaintiffs are to be treated with great solicitude and should be construed in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). They must be read "to raise the strongest arguments that they suggest." *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks and citation omitted). Where a litigant is *pro se*, the Court may also consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 223 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 *Moore's Federal Practice* § 12.34[1][b], at 12-61 (2005)). Even in a *pro se* case, "threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). Thus, while the Court must "draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

**III. Section 1983**

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under Section 1983, a plaintiff must allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Defendant argues that the Complaint should be dismissed because (1) its allegations are conclusory, (2) it fails to allege Defendant's personal involvement, (3) it fails to state an Eighth Amendment failure-to-protect claim, and (4) Defendant is entitled to qualified immunity. (Def.'s Mem. at 2–6.) The first three arguments turn on the same deficiency: the absence of non-conclusory allegations that Defendant himself knew of and disregarded a substantial risk to Plaintiff's safety. The Court therefore addresses them together.

**I. Eighth Amendment Failure to Protect**

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged

constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Claims involving prison officials "require[] a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (internal quotation marks omitted)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted).

In *Tangreti v. Bachmann*, the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "The violation must be established against the supervisory official directly." *Id.* Accordingly, a plaintiff asserting an Eighth Amendment claim against a supervisory official must plead the elements of that claim against the official himself, without relying on the official's supervision of others. *See id.* at 618–19.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," and "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks omitted). To state a failure-to-protect claim, a plaintiff must plead "both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Tangreti*, 983 F.3d at 618–19 (quoting *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020)). Deliberate indifference requires that the official "know[] of and disregard[] an excessive risk to inmate health

or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Under *Tangreti*, then, Plaintiff must allege facts showing that Defendant "personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." 983 F.3d at 619. It is not enough that Defendant "could have or should have" drawn the inference of a risk, or that he was "negligent, or even grossly negligent," in supervising his subordinates. *Id.* at 619–20.

A defendant may be deliberately indifferent either to a specific risk to the plaintiff or to a general risk to all inmates. *See Constant v. Prack*, No. 16-cv-3985 (NSR), 2019 U.S. Dist. LEXIS 121629, at *18–19 (S.D.N.Y. July 19, 2019). As to a general risk, a plaintiff must allege that the defendant "knew of a history of prior inmate-on-inmate attacks similar to the one suffered by plaintiff" and could have taken measures "in response to such prior attacks [that] would have prevented the attack on the plaintiff." *Id.* at *18 (internal quotation marks omitted). This generally requires a plaintiff to establish a "'longstanding, pervasive, well-documented' history of similar attacks, coupled with 'circumstances suggest[ing] that the defendant-official being sued had been exposed to [this] information.'" *Id.* (internal quotation marks omitted); *see Farmer*, 511 U.S. at 842–43.

For purposes of this motion, the Court assumes, without deciding, that Plaintiff has satisfied the objective prong. *See Randolph v. Dep't of Corr. & Cmty. Supervision*, No. 17-CV-0700 (NSR), 2018 U.S. Dist. LEXIS 156429, at *7 (S.D.N.Y. Sept. 13, 2018); *see also Constant*, 2019 U.S. Dist. LEXIS 121629, at *16–17 (yard attack that caused wounds to plaintiff's head, face, and ear and required emergency medical treatment satisfied objective prong). Plaintiff's claim nonetheless fails because the Complaint does not plausibly allege that Defendant was deliberately indifferent to either a specific risk to Plaintiff or a general risk to incarcerated individuals in the B-Block yard.

**a. Specific Risk to Plaintiff**

The Complaint does not allege that Defendant knew of any specific risk to Plaintiff. Plaintiff does not allege that he knew his assailant, that he had any prior altercation with him, that he received any threat before the assault, or that he told Defendant or anyone else that he feared for his safety. (*See generally* Compl.) Nor does Plaintiff allege that Defendant was present in the yard or otherwise aware of the assault as it occurred. Plaintiff's affidavit and memorandum of law, which the Court has considered in light of his *pro se* status, add no such facts. Plaintiff's affidavit restates paragraphs 6 through 11 of the Complaint nearly verbatim. (*Compare* Pl.'s Aff. ¶¶ 3–8, *with* Compl. ¶¶ 6–11.)

As alleged, then, the assault was a surprise attack by an unknown individual. "Absent clear notice of a risk of harm to the prisoner, '[c]ourts routinely deny deliberate indifference claims based upon surprise attacks.'" *Constant*, 2019 U.S. Dist. LEXIS 121629, at *19–20 (quoting *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08 CV 4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010)). In *Randolph*, this Court dismissed a failure-to-protect claim against Defendant himself, as Superintendent of Sing Sing, because of "the lack of allegations demonstrating that Capra knew that Plaintiff, in particular, faced harm." *Randolph*, 2018 U.S. Dist. LEXIS 156429, at *7. The same deficiency is present here. Plaintiff therefore fails to allege that Defendant was deliberately indifferent to a specific risk to Plaintiff.

**b. General Risk in the B-Block Yard**

Plaintiff's principal theory is that Defendant was deliberately indifferent to a general risk of inmate-on-inmate violence in the B-Block yard. Liberally construed, the Complaint alleges that approximately twenty similar assaults occurred in the yard during the month Plaintiff was housed

at Sing Sing, that such assaults have recurred over the past five years, and that Defendant "knows" of them. (Compl. ¶¶ 8–9.) The Court does not discount these allegations. A pattern of frequent, similar attacks in a single location can, if adequately pleaded, support an inference that a risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," such that the official "had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842–43 (internal quotation marks omitted). Plaintiff likewise argues that deliberate indifference may be shown by "the existence of a 'pervasive risk of harm to inmates from other prisoners'" coupled with a lack of reasonable response to that risk. (Pl.'s Opp. at 10 (quoting *Rucco v. Howard*, No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993)).) But even under that formulation, the risk must be one of which the defendant was actually aware. *See Tangreti*, 983 F.3d at 619–20. The Complaint does not plead facts that would make that inference plausible as to Defendant, for three reasons.

*First*, the allegations describing the prior incidents are themselves conclusory. Plaintiff does not describe a single prior assault. He does not allege when or where in the yard any prior assault occurred, whether a weapon was used, whether anyone was injured, or how staff responded. He alleges only that the incidents were "similar or identical" to his own. (Compl. ¶ 8.) Nor does he allege how he learned of them. Without any such detail, the Court cannot assess whether the prior incidents were sufficiently "similar to the one suffered by plaintiff" to have put an official on notice of the risk that materialized here. *Constant*, 2019 U.S. Dist. LEXIS 121629, at *18 (internal quotation marks omitted).

*Second*, and more fundamentally, even crediting that the prior incidents occurred, the Complaint contains no facts suggesting that Defendant was aware of them. Plaintiff does not allege that the incidents were reported to Defendant; that they were recorded in incident reports,

grievances, or other records that reached Defendant; that they were the subject of complaints or lawsuits of which Defendant was aware; or that Defendant otherwise acknowledged them. The only allegation of Defendant's knowledge is that he "knows, created and allowed" the practice. (Compl. ¶ 9.) That allegation is a bare legal conclusion, which the Court need not credit. *See Iqbal*, 556 U.S. at 678. In *Randolph*, this Court rejected a materially identical allegation against Defendant himself, that the Superintendent "was indeed knowledgeable of such bad acts amongst his security staff," because the plaintiff "wholly fail[ed] to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.'" 2018 U.S. Dist. LEXIS 156429, at *7–8 (quoting *Farmer*, 511 U.S. at 842–43). Similarly, in *Constant*, the Court held that an allegation that the Green Haven superintendent "knew or should have known about violent incidents" between inmates before a razor attack in the facility's yard was insufficient, even when supplemented by references to three prior lawsuits, to show that the superintendent "was aware of a longstanding history of prior inmate-on-inmate attacks like the one experienced by Plaintiff." 2019 U.S. Dist. LEXIS 121629, at *24–25. Plaintiff's allegations here are no more detailed than those found wanting in *Randolph* and *Constant*.

*Third*, Plaintiff does not allege what measures Defendant failed to take in response to the prior incidents, or how any such measure would have prevented the assault on Plaintiff. *See Constant*, 2019 U.S. Dist. LEXIS 121629, at *18. The Complaint alleges only that the assaults "have not changed and continue to happen." (Compl. ¶ 8.) Without allegations identifying what Defendant did or failed to do, the Court cannot infer that Defendant "disregard[ed]" a known risk "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff's further allegation that the assaults, including his own, occurred "in the presence of security staff" does not cure these deficiencies. (Compl. ¶¶ 6–7.) To the extent this allegation suggests that officers in the yard failed to intervene, it describes the conduct of individuals who are not named as defendants. Defendant cannot be held liable for their conduct merely because he supervised them. *See Tangreti*, 983 F.3d at 618; *Summers v. Burnett*, No. 23-cv-10784 (NSR), 2025 U.S. Dist. LEXIS 194940, at *18 (S.D.N.Y. Sept. 29, 2025) (dismissing failure-to-protect claim against superintendent as resting on "supervisory liability"). Nor does the allegation say anything about what Defendant himself knew. Accordingly, Plaintiff fails to allege that Defendant was deliberately indifferent to a general risk of harm in the B-Block yard.

**c. Plaintiff's Policy-or-Custom Theory**

In opposition, Plaintiff argues that Defendant was personally involved because he "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," relying on *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), and on cases addressing the liability of municipalities for official policies and customs. (Pl.'s Opp. at 5–7.) This argument fails.

In *Tangreti*, the Second Circuit rejected the use of the *Colon* factors as "a special test for supervisory liability" and held instead that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official." 983 F.3d at 620. Thus, even where a plaintiff proceeds on a theory that a supervisor created or tolerated an unconstitutional policy or custom, he must still allege that the supervisor himself acted with deliberate indifference. *See id.* at 618–19. The municipal-liability cases on which Plaintiff relies do not alter that requirement, because they address the liability of municipalities rather than individual officials sued in their personal capacities. Here, Plaintiff does not identify any policy that Defendant adopted. The

"custom" he describes is simply the recurrence of the assaults themselves. (Compl. ¶¶ 7, 9.) Labeling that recurrence as Defendant's "custom" does not supply the missing allegations that Defendant knew of the assaults and disregarded the risk they posed. *See Brown v. Griffin*, No. 19-cv-02296 (NSR), 2022 U.S. Dist. LEXIS 45096, at *20–21 (S.D.N.Y. Mar. 14, 2022) (dismissing supervisory defendants under *Tangreti* where plaintiff did not allege that they "ever personally participated in any of the alleged constitutional violations").[2]

In sum, the Complaint does not plausibly allege that Defendant, "through [his] own individual actions," violated Plaintiff's Eighth Amendment rights. *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). Accordingly, Plaintiff's Eighth Amendment failure-to-protect claim against Defendant is dismissed.[3]

**II. Leave to Amend**

The Second Circuit has advised that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam*). This is Plaintiff's first complaint, and the Court cannot rule out the possibility that Plaintiff could allege

---

[2] Plaintiff alleges that he exhausted his administrative remedies through the DOCCS grievance process. (Compl. ¶ 12.) The Complaint does not allege that Defendant reviewed or decided Plaintiff's grievance. In any event, "[a] post-hoc grievance about a prior incident . . . does not support an inference that [a superintendent] failed to remedy a pre-existing constitutional violation." *Constant*, 2019 U.S. Dist. LEXIS 121629, at *24 n.9; *see also Brown*, 2022 U.S. Dist. LEXIS 45096, at *21 (supervisors' alleged failure to act on plaintiff's letters and complaints did not establish personal involvement under *Tangreti*).

[3] Defendant also argues that he is entitled to qualified immunity. (Def.'s Mem. at 5–6; Def.'s Reply at 5–6.) In light of the Court's decision to dismiss Plaintiff's sole claim for failure to state a claim, the Court declines to consider qualified immunity at this time. *See Randolph*, 2018 U.S. Dist. LEXIS 156429, at *13 n.7; *Trimm v. N.Y. State Dep't of Corr.*, No. 24-CV-2737 (NSR), 2025 U.S. Dist. LEXIS 100392, at *7 (S.D.N.Y. May 27, 2025).

additional facts sufficient to state a claim. Accordingly, Plaintiff's claim is dismissed without prejudice, and Plaintiff is granted leave to amend.

Plaintiff is advised that, to state a claim against Defendant, any amended complaint must allege facts, not conclusions, showing that Defendant himself knew of and disregarded an excessive risk to Plaintiff's safety. Such facts may include, for example, how and when Defendant learned of prior assaults in the B-Block yard, what those prior assaults involved, and what Defendant did or failed to do in response. To the extent Plaintiff seeks to hold liable the security staff who were allegedly present during his assault, he must name those individuals as defendants, either by name or, if their names are unknown, as "John Doe" defendants with as much identifying information as possible, and must allege facts showing each individual's personal involvement in the alleged violation.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED. Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Michael Capra is DISMISSED without prejudice.

Plaintiff is granted leave to file an Amended Complaint on or before January 15, 2027. A blank amended complaint form is attached to this Opinion & Order. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Amended Complaint. If Plaintiff files an Amended Complaint, Defendant is directed to answer or otherwise respond by February 16, 2027. If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to

excuse such failure, the claim dismissed without prejudice by this Opinion & Order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 22 and 23, to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF, and to show service on the docket.

SO ORDERED.

Dated: November 16, 2026
White Plains, New York

Nelson S. Román, U.S. District Judge